EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |
|---|---|
| In re:<br><br><br><br>María del Mar Martín Hidalgo | 2024 TSPR 123<br><br>214 DPR ___ |

Número del Caso:  TS-17,951


Fecha:  27 de noviembre de 2024


Oficina del Procurador General:

     Lcda. Mabel Sotomayor Hernández
     Subprocuradora General

     Lcda. Yaizamarie Lugo Fontánez
     Procuradora General Auxiliar

     Lcda. Juliana N. Castro Ramos
     Procuradora General Auxiliar


Oficina de Inspección de Notarías:

     Lcdo. Manuel E. Ávila De Jesús
     Director


Comisionada Especial:

     Hon. Crisanta González Seda


Materia:  Conducta Profesional – Suspensión indefinida del ejercicio de la abogacía y la notaría como medida de protección social.


Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| *In re*:<br><br>María del Mar Martín Hidalgo | TS-17,951 | Conducta<br>Profesional |

*PER CURIAM*

En San Juan, Puerto Rico, a 27 de noviembre de 2024.

En conformidad con el poder inherente de este Tribunal para regular la práctica de la abogacía en Puerto Rico, nos corresponde atender la situación de una abogada provisionalmente suspendida del ejercicio de la profesión legal que no se encuentra en condiciones óptimas para ejercer sus funciones.[1]

En virtud del proceso que establece la Regla 15 del Reglamento de este Tribunal, 4 LPRA Ap. XXI-B, y con el firme propósito de mantener la confianza de nuestra sociedad en unos servicios legales de calidad, nos vemos

---

[1] En vista de que la Sra. María del Mar Martín Hidalgo (señora Martín Hidalgo o abogada) fue suspendida provisionalmente de la profesión legal, para fines de la ponencia nos referiremos a ésta en el historial procesal como "licenciada Martín Hidalgo o abogada" hasta la fecha de su suspensión.

obligados a suspender de forma indefinida a la Sra. María del Mar Martín Hidalgo del ejercicio de la abogacía y de la notaría como una medida de protección social.[2] Veamos el trasfondo fáctico y procesal que originó el caso ante nuestra consideración.

I

La licenciada Martín Hidalgo fue admitida al ejercicio de la abogacía el 17 de agosto de 2010 y prestó juramento como notaria el 21 de enero de 2011.

A. Trasfondo fáctico y procesal de la *Queja* AB-2023-196

El 4 de agosto de 2023, la Secretaría del Centro Judicial de Caguas le refirió a la Lcda. Sonnya Isabel Ramos Zeno (licenciada Ramos Zeno), entonces Jefa de la Oficina de las Secretarías adscrita a la Oficina de Administración de los Tribunales (OAT), una situación relacionada con la abogada.

Luego de una investigación interna, el 23 de agosto de 2023, la licenciada Ramos Zeno refirió a nuestra atención el asunto relacionado con la licenciada Martín Hidalgo para el trámite correspondiente debido a que las acciones u omisiones de la abogada podían constituir serias violaciones a los Cánones de Ética Profesional.[3] De igual

---

[2] Mediante una *Resolución* emitida el 1 de marzo de 2024, suspendimos provisionalmente a la licenciada Martín Hidalgo del ejercicio de la abogacía y de la notaría hasta tanto finalizara el procedimiento establecido en la Regla 15 del Reglamento del Tribunal Supremo, 4 LPRA Ap. XXI-B, al cual fue referida y emitiéramos cualquier otra determinación.

[3] Según señaló la Lcda. Sonnya Isabel Ramos Zeno (licenciada Ramos Zeno), entonces Jefa de la Oficina de las Secretarías adscrita a la

manera, la licenciada Ramos Zeno refirió el asunto a la Jefa de Fiscales del Departamento de Justicia de Puerto Rico (Departamento de Justicia) para la investigación correspondiente.[4] Así pues, el asunto referido se acogió como una *Queja* (AB-2023-196) en contra de la licenciada Martín Hidalgo y originó el caso ante nuestra consideración. Al día siguiente, el 24 de agosto de 2023, se le concedió a la abogada un término de diez (10) días para que contestara la *Queja*.

El 1 de septiembre de 2023, la licenciada Martín Hidalgo presentó una *Moción en cumplimiento de orden y en solicitud de prórroga para contestar*. En ésta expresó que había estado hospitalizada y que fue dada de alta el 22 de agosto

---

Oficina de Administración de los Tribunales (OAT), la investigación reveló ciertos hallazgos en relación con las acciones u omisiones de la abogada y notaria activa. En particular, expuso lo siguiente:

Entre los serios hallazgos de nuestra investigación interna[,] se encuentran los siguientes:

1. La *Petición de Declaratoria de Herederos* del Sr. Carlos Roberto Simonetti Torres nunca fue presentada en nuestros tribunales, pero existe un documento, falso y fraudulento, con número de caso y *time stamp* del SUMAC.

2. No existe en el SUMAC una Resolución sobre *Declaratoria de Herederos* con número de caso CG2021CV00541 emitida el 14 de enero de 2022 por la Hon. Viviana J. Torres Reyes[,] pero existe una alegada copia certificada, a todas luces falsa y fraudulenta, que se intentó utilizar para presentar un nuevo caso de Partición de Herencia.

3. La copia certificada de la mencionada Resolución es un documento falso y fraudulento[,] ya que no fue expedido por la funcionaria [...] el 20 de enero de 2022.

4. El testimonio número 25,127 alegadamente legitimado por la notaria María del Mar Martín Hidalgo (RUA 17,951) no aparece registrado por ésta en su Informe Mensual de Actividad Notarial.

5. No surge del SUMAC ningún caso de Declaratoria de Herederos ni de ninguna otra causa de acción o materia, presentado por la licenciada Martín Hidalgo sobre las partes en cuestión. Véase *Carta dirigida al Secretario del Tribunal Supremo el 23 de agosto de 2023*, pág. 4.

[4] *Íd.*, pág. 1.

de 2023. Además, indicó que tenía que continuar con su tratamiento de salud y no había podido atender los asuntos requeridos por el Tribunal, por lo cual nos solicitó un término de treinta (30) días adicionales para responder la *Queja*. En consideración a esto, el 15 de septiembre de 2023 emitimos una *Resolución* mediante la cual le concedimos a la abogada un término de quince (15) días para que contestara la *Queja*.[5]

Más adelante, el 3 de octubre de 2023, la licenciada Martín Hidalgo presentó **-por segunda ocasión-** una *Moción en cumplimiento de orden y en solicitud de prórroga para contestar*, en la cual manifestó que su condición de salud se había agravado y que tenía una cita coordinada con un potencial representante legal, por lo que solicitó un término de treinta (30) días adicionales para responder la *Queja.* Ante esto, el 6 de octubre de 2023, emitimos una *Resolución* mediante la cual le concedimos a la abogada un término final e improrrogable de treinta (30) días para que cumpliera con lo ordenado el 15 de septiembre de 2023.

El 11 de octubre de 2023 emitimos una *Resolución* en la que le ordenamos a la licenciada Martín Hidalgo que en el término de cinco (5) días le notificara a la licenciada Ramos Zeno las mociones presentadas el 1 de septiembre y el 3 de octubre de 2023, así como que nos acreditara su

---

[5] El archivo en autos de copia de la *Resolución* fue el 18 de septiembre de 2023.

cumplimiento.[6]   Ante el incumplimiento con lo ordenado, el 24 de octubre de 2023 emitimos otra *Resolución* en la que le concedimos a la abogada un término final e improrrogable de cinco (5) días para que cumpliera con nuestra *Resolución* del 11 de octubre de 2023.  Además, le apercibimos que su incumplimiento con nuestras órdenes podría conllevar sanciones severas, incluyendo su suspensión del ejercicio de la abogacía y la notaría.[7]

La licenciada Martín Hidalgo cumplió con notificar a la licenciada Ramos Zeno las mociones pendientes, pero no contestó la *Queja* según ordenado en nuestras *Resoluciones* del 15 de septiembre de 2023 y del 6 de octubre de 2023. Ante esto, el 13 de noviembre de 2023 emitimos una *Resolución* mediante la cual le concedimos a la abogada un término de cinco (5) días para que mostrara causa por la que no debía ser suspendida de forma inmediata e indefinida del ejercicio de la abogacía y de la notaría por su reiterado incumplimiento con las órdenes de este Tribunal.[8]

Expirado el término para cumplir con nuestra *Resolución*, el 28 de noviembre de 2023, la licenciada Martín Hidalgo presentó una *Moción en cumplimiento de orden* en la que nos expresó que debido a razones económicas y de

---

[6]   El archivo en autos de copia de la *Resolución* fue el 12 de octubre de 2023.

[7]   La notificación personal de esta *Resolución* fue el 27 de octubre de 2023.

[8]   El archivo en autos de copia de la *Resolución* fue el 14 de noviembre de 2023.

salud no había podido buscar ayuda legal para contestar los requerimientos de este Tribunal en el término concedido. Así las cosas, manifestó que no era su intención continuar dilatando el proceso, pero que necesitaba más tiempo, por lo que solicitó -**por tercera ocasión**- un término adicional de quince (15) días para contestar la *Queja*.

El 15 de diciembre de 2023 emitimos una *Resolución* en la cual le concedimos a la abogada un término final e improrrogable de quince (15) días para que cumpliera con nuestra *Resolución* del 13 de noviembre de 2023 a los fines de que mostrara causa por la cual no debía ser suspendida de forma inmediata e indefinida del ejercicio de la abogacía y de la notaría debido a su reiterado incumplimiento con nuestras órdenes. Además, le requerimos que en el mismo término debía mostrar causa por la cual no debía ser referida al proceso establecido en la Regla 15 de nuestro Reglamento, *supra*. Por último, le apercibimos **nuevamente** que el incumplimiento con nuestra *Resolución* podría conllevar la suspensión de la abogacía y de la notaría.[9] Transcurrido el término concedido, la licenciada Martín Hidalgo no compareció ante este Tribunal.

El 19 de enero de 2024 emitimos una *Resolución* mediante la cual ordenamos que, en la *Queja* AB-2023-196, se comenzara el procedimiento dispuesto en la Regla 15(c) de

---

[9] El archivo en autos de copia de la *Resolución* fue el 21 de diciembre de 2023.

nuestro Reglamento, *supra*, a los fines de hacer una determinación sobre la capacidad mental de la abogada.

Mediante una *Moción informativa urgente* presentada ante este Foro el 20 de febrero de 2024, la licenciada Ramos Zeno expuso que había advenido "en conocimiento de que posterior al referido ético que realizamos [habían] surgido nuevas alegaciones de documentos fraudulentos que envuelven a la misma abogada notaria". (Negrilla omitida y subrayado en el original).[10] La licenciada Ramos Zeno añadió que tenía una inmensa preocupación ante la existencia de una alegada segunda decisión del Tribunal de Primera Instancia, Sala de Caguas, que contenía -al igual que en el primer caso referido- un *time stamp* falso y fraudulento en un caso que no existía en el registro de casos del Tribunal Electrónico. Al respecto, expresó que esta "segunda determinación fue 'creada' o 'montada' posterior al referido del 23 de agosto de 2023 y en ambos casos los clientes [alegaron] contrataron los servicios de la licenciada Martín Hidalgo para llevar a cabo los procesos judiciales". (Negrilla omitida y subrayado en el original).[11]

Mediante *Resolución* del 22 de febrero de 2024, le ordenamos a la licenciada Martín Hidalgo a que, en el término final e improrrogable de cinco (5) días, mostrara causa por la cual no debía ser suspendida de manera

---

[10]    Véase *Moción informativa urgente,* pág. 1.

[11]    Íd., págs. 3-4.

provisional del ejercicio de la abogacía y la notaría ante los señalamientos presentados por la licenciada Ramos Zeno en su *Moción informativa urgente* del 20 de febrero de 2024.

El 29 de febrero de 2024, la abogada presentó una *Moción en cumplimiento de orden* en la cual indicó que aún no había podido conseguir representante legal y que tenía pendiente una reunión con un abogado para el 6 de marzo de 2024. Ante esto, nos solicitó -**por cuarta ocasión**- un término final de diez (10) días para contestar la *Queja* en su contra.

Dado el incumplimiento con lo ordenado por este Tribunal, el 1 de marzo de 2024, emitimos una *Resolución* en la que, **como medida de protección social**, suspendimos <u>provisionalmente</u> a la licenciada Martín Hidalgo (en adelante, señora Martín Hidalgo o abogada) del ejercicio de la abogacía y de la notaría hasta tanto finalizara el procedimiento al que fue referida de acuerdo con la Regla 15 de nuestro Reglamento, *supra*.[12]

---

[12]    En dicha *Resolución*, le impusimos a la licenciada Martín Hidalgo (en adelante, señora Martín Hidalgo o abogada) el deber de notificar a todos sus clientes de su inhabilidad para continuar representándolos, devolver los expedientes de los casos pendientes, así como los honorarios recibidos por trabajos no realizados e informar inmediatamente de su suspensión a los foros judiciales y administrativos en los cuales tuviese algún asunto pendiente. Además, tenía la obligación de acreditar y certificar ante este Tribunal el cumplimiento con lo anterior, incluyendo una lista de los clientes y los foros a los que notificó de su suspensión, dentro del término de treinta (30) días, contado a partir de la notificación de nuestra Resolución. **La señora Martín Hidalgo también incumplió con todo lo anterior según requerido en nuestra *Resolución* del 1 de marzo de 2024.**

Asimismo, le informamos a la abogada que su fianza notarial quedaba automáticamente cancelada y que ésta se consideraría buena y válida por tres (3) años después de su terminación en cuanto a los actos realizados por ésta durante el periodo en que la misma estuvo vigente.

B.  Trasfondo fáctico y procesal en el TS-17,951 simultáneo con la *Queja* AB-2023-196

De manera coetánea con los procesos en la *Queja* AB-2023-196, se atendieron los procesos en el TS-17,951, específicamente en cuanto al ejercicio de la notaría por parte de la señora Martín Hidalgo.  En particular, luego de corroborar unos asuntos traídos ante la consideración del Lcdo. Manuel E. Ávila De Jesús, Director de la Oficina de Inspección de Notarías (ODIN), éste presentó una *Moción en auxilio del Tribunal solicitando incautación preventiva de obra notarial* el 14 de agosto de 2023.  En su escrito, el Director de la ODIN nos expresó su preocupación en cuanto al desempeño de la abogada en el ejercicio de la función notarial.  Al respecto, manifestó que la señora Martín Hidalgo: (1) había incumplido de manera sistemática e injustificada con su obligación de presentar los Informes Notariales ante la ODIN por un periodo que excedía los seis (6) años naturales; (2) había puesto en riesgo la validez o eficacia de una declaración jurada que aceptó que había legitimado en septiembre de 2021, e (3) infringió la Ley Notarial, el Reglamento Notarial y el Reglamento del Tribunal Supremo de Puerto Rico al trasladar a su residencia, sin autorización para ello, la obra notarial que custodia.

Así pues, el Director de la ODIN nos solicitó que se procediera con la incautación preventiva de la obra protocolar y el sello notarial de la abogada.  Asimismo, nos recomendó concederle un término a la señora Martín

Hidalgo para que explicara las inconsistencias en cuanto a las diversas situaciones planteadas sobre su desempeño en el ejercicio de la notaría.

Al día siguiente, el 15 de agosto de 2023, la abogada presentó una *Moción urgente en solicitud de entrega voluntaria de obra notarial y de sello notarial*. A raíz de esto, el 17 de agosto de 2023, emitimos una *Resolución* mediante la cual le ordenamos a la señora Martín Hidalgo que en el término de diez (10) días: (1) mostrara causa por la cual no debía ser suspendida indefinidamente del ejercicio de la notaría debido a su reiterado incumplimiento con los requerimientos de la ODIN, y (2) se expresara en cuanto a los señalamientos esbozados por la ODIN en su *Moción en auxilio del Tribunal solicitando incautación preventiva de obra notarial.* De igual forma, apercibimos a la abogada que su incumplimiento con lo ordenado podría conllevar la imposición de severas sanciones disciplinarias, como lo sería la suspensión del ejercicio de la abogacía. Además, **ordenamos la incautación preventiva de la obra protocolar y el sello notarial de la señora Martín Hidalgo.**[13]

El 22 de agosto de 2023, emitimos una *Resolución* en la cual dispusimos "nada que proveer" a la *Moción urgente en solicitud de entrega voluntaria de obra notarial y de sello notarial* presentada por la abogada y le ordenamos que

---

[13] El archivo en autos de copia de la *Resolución* fue el 24 de agosto de 2023.

cumpliera con nuestra *Resolución* del 17 de agosto de 2023.[14] No obstante, el 1 de septiembre de 2023, la señora Martín Hidalgo presentó una *Moción en cumplimiento de orden y en solicitud de prórroga para contestar*. En ésta expuso que había estado hospitalizada y que fue dada de alta el 22 de agosto de 2023. Asimismo, expresó que tenía que continuar con su tratamiento de salud y que no había podido atender los asuntos requeridos por este Tribunal. Ante esto, nos solicitó un término de treinta (30) días adicionales para atender el asunto pendiente ante este Tribunal.

Más adelante, el 11 de septiembre de 2023, el Director de la ODIN presentó un *Informe sobre el estado de [la] obra notarial incautada*. En éste detalló las faltas que se encontraron en la obra notarial parcialmente incautada, lo que incluía una deuda arancelaria preliminarmente estimada de **$156,420** (**$520** en su obra protocolar y **$155,900** en su Libro de Registro de Testimonios). Ante este panorama, el Director de la ODIN solicitó que suspendiéramos a la abogada de forma inmediata e indefinida del ejercicio de la notaría y le ordenáramos la entrega de la obra no incautada en o antes del 15 de septiembre de 2023. Además, nos solicitó que le requiriéramos que se expresara sobre los aranceles adeudados, so pena de referir el asunto al Departamento de Justicia.

---

**14** El archivo en autos de copia de la *Resolución* fue el 24 de agosto de 2023.

Así las cosas, el 15 de septiembre de 2023, emitimos una *Resolución* mediante la cual le concedimos a la señora Martín Hidalgo un término de treinta (30) días para que mostrara causa por la cual no debía ser suspendida de manera inmediata e indefinida del ejercicio de la notaría debido a lo expresado por la ODIN en su *Informe*. Asimismo, le concedimos un término adicional de quince (15) días para que cumpliera con lo ordenado en nuestra *Resolución* del 17 de agosto de 2023 y explicara la situación relacionada con los aranceles adeudados so pena de referir el asunto a la atención del Departamento de Justicia. De igual forma, le ordenamos que en el término de cinco (5) días debía entregar a la ODIN la obra no incautada y acreditarnos el cumplimiento con lo anterior. En dicha ocasión, apercibimos a la abogada que su incumplimiento con nuestra *Resolución* podría conllevar sanciones severas, incluyendo su suspensión de la profesión legal.[15]

Mediante una moción presentada el 3 de octubre de 2023, la señora Martín Hidalgo nos informó que su condición de salud se había agravado; que no había podido generar ingresos y debía mudarse de residencia; que tenía programada una cita con un posible representante legal y que tenía una "caja llena de aranceles" que no había podido adherir a la obra protocolar ni al Libro de Registro de Testimonios. Ante esto, nos solicitó **-por segunda ocasión-**

---

[15] El archivo en autos de copia de la *Resolución* fue el 18 de septiembre de 2023.

un término de treinta (30) días adicionales para cumplir con lo ordenado. Así pues, emitimos una *Resolución* mediante la que concedimos a la abogada un término final e improrrogable de treinta (30) días para que cumpliera con nuestra *Resolución* del 15 de septiembre de 2023.

El 13 de octubre de 2023, el Director de la ODIN presentó una moción en la cual nos solicitó que le ordenáramos a la señora Martín Hidalgo que entregara de forma inmediata la obra notarial no incautada y los aranceles que tuviera en su posesión, así como que evaluáramos si procedía comenzar un proceso en virtud de la Regla 15 de nuestra Reglamento, *supra*. A raíz de esto, el 18 de octubre de 2023, emitimos una *Resolución* mediante la cual le concedimos a la abogada un término de cinco (5) días para que entregara la obra notarial y los aranceles que tuviera en su posesión.

El 26 de octubre de 2023, el Director de la ODIN presentó una moción en la cual expuso que la señora Martín Hidalgo incumplió con nuestra *Resolución* del 18 de octubre de 2023. En particular, indicó que la abogada no había entregado la obra notarial no incautada ni los aranceles que informó que tenía bajo su custodia. Ante esto, nos solicitó que decretáramos la suspensión inmediata e indefinida de la señora Martín Hidalgo del ejercicio de la notaría y la refiriéramos al proceso de desacato civil ante el foro primario por su reiterado incumplimiento con los requerimientos de este Foro.

Así pues, el 13 de noviembre de 2023, emitimos una *Resolución* en la cual le ordenamos a la abogada a que, en el término de cinco (5) días, mostrara causa por la cual no debía ser suspendida de forma inmediata e indefinida del ejercicio de la notaría por razón de lo expuesto por la ODIN en su *Informe sobre el estado de [la] obra notarial incautada* del 11 de septiembre de 2023. Asimismo, referimos el asunto al Tribunal de Primera Instancia, Sala Superior de San Juan, para encaminar el proceso de desacato civil en su contra debido al patrón de incumplimiento con los requerimientos de este Tribunal en relación con su obra notarial.[16]

Más adelante, el 28 de noviembre de 2023, la señora Martín Hidalgo presentó una *Moción en cumplimiento de orden* en la que indicó que, por razones económicas y de salud, no había podido buscar ayuda legal para contestar los requerimientos de este Tribunal en el término concedido. Por esto, solicitó **-por tercera ocasión-** un término adicional de quince (15) días para atender lo ordenado.

En vista de ello, el 15 de diciembre de 2023, emitimos una *Resolución* mediante la cual le concedimos a la abogada un término final e improrrogable de quince (15) días para que cumpliera con nuestra *Resolución* del 13 de noviembre de 2023, y mostrara causa por la cual no debía ser referida al proceso dispuesto en la Regla 15 de nuestro Reglamento,

---

[16] El archivo en autos de copia de la *Resolución* fue el 14 de noviembre de 2023.

*supra*. Asimismo, le apercibimos que su incumplimiento con nuestra *Resolución* conllevaría la suspensión del ejercicio de la abogacía y la notaría.[17]

Evaluados los documentos y escritos relacionados con la señora Martín Hidalgo, el 19 de enero de 2024, emitimos una *Resolución* en la que ordenamos que se iniciara el procedimiento establecido en la Regla 15(c) de nuestro Reglamento, *supra*, para que se hiciera una determinación sobre su capacidad mental.

Como mencionamos previamente, el 1 de marzo de 2024, **como medida de protección social**, suspendimos provisionalmente a la abogada del ejercicio de la abogacía y de la notaría hasta tanto finalizara el procedimiento al que fue referida de acuerdo con la Regla 15 de nuestro Reglamento, *supra*.

Más adelante, el 26 de marzo de 2024, el Director de la ODIN presentó un *Informe actualizado sobre el estado de [la] obra notarial y en solicitud de remedios*, el cual recoge lo expuesto en el proceso de desacato civil en el Caso Núm. K MI2023-0222 ante el Tribunal de Primera Instancia, Sala de San Juan. En particular, se indicó que: (1) la señora Martín Hidalgo no ha entregado 123 instrumentos públicos y que dicha cantidad pudiera ser mayor debido a que ésta adeuda más de cincuenta (50) *Informes de Actividad Notarial Mensual*; (2) la obra

---

[17] El archivo en autos de copia de la *Resolución* fue el 21 de diciembre de 2023.

incautada no está encuadernada ni foliada; (3) existen negocios jurídicos celebrados que tienen que ser ratificados por carecer los instrumentos públicos otorgados de la firma de la notaria o de las partes otorgantes; (4) se adeudan los *Informes de Actividad Notarial Mensual* desde octubre de 2014 a diciembre de 2020, así como los *Informes Estadísticos de Actividad Notarial Anual* desde el 2014 hasta la fecha de la incautación de su obra notarial, y (5) la abogada no ha entregado la cantidad total de **$132,799.50** en aranceles que deben ser adheridos tanto a los instrumentos públicos incautados (**$3,594.50**) como cancelados en los volúmenes del Libro de Registro de Testimonios que tienen que ser reconstruidos (**$129,205.00**).[18]

En vista de lo anterior, el Director de la ODIN nos solicitó que refiriéramos al foro primario el proceso de subsanación de la obra notarial parcialmente incautada de la señora Martín Hidalgo y su incumplimiento de presentar los *Informes de Actividad Notarial* adeudados, esto para que se consolidaran ambos trámites con los asuntos que

---

[18] En conformidad con lo expuesto por el Lcdo. Manuel E. Ávila De Jesús, Director de la Oficina de Inspección de Notarías (ODIN), esa partida de **$129,205.00** contempla los testimonios legitimados por la señora Martín Hidalgo hasta febrero de 2023. No obstante, advirtió que "[s]e desconoce la partida adicional que, por concepto de aranceles, pueda adeudar de los testimonios legitimados desde el mes de marzo de 2023 hasta la fecha de la incautación de su obra notarial". Véase *Informe actualizado sobre el estado de [la] obra notarial y en solicitud de remedios*, pág. 3 esc. 2.

Según surge del expediente, el proceso de incautación de la obra notarial se ejecutó en dos (2) días, el 23 de agosto de 2023 y el 1 de septiembre de 2023, y en ambas instancias la incautación fue parcial. Véase *Informe sobre el estado de [la] obra notarial incautada* del 11 de septiembre de 2023, pág. 1.

referimos al foro de primera instancia y que son materia del Caso Núm. K MI2023-0222.

Así pues, el 4 de abril de 2024, emitimos una *Resolución* en la cual le concedimos a la abogada un término final e improrrogable de quince (15) días para que se expresara sobre el *Informe* presentado por la ODIN. Asimismo, le apercibimos que, de incumplir con lo ordenado, se entendería que se allanaba a lo expresado por la ODIN, lo que conllevaría referir el proceso de subsanación de la obra notarial parcialmente incautada, así como su incumplimiento con presentar los *Informes de Actividad Notarial* adeudados, al proceso de desacato civil ante el Tribunal de Primera Instancia, Sala de San Juan. De igual forma, le apercibimos que su incumplimiento con lo ordenado por este Tribunal conllevaría referir el asunto de los aranceles adeudados al Departamento de Justicia.

Transcurrido el término concedido a la señora Martín Hidalgo sin que ésta compareciera, el 29 de abril de 2024, emitimos una *Resolución* mediante la cual referimos el proceso de subsanación de la obra notarial parcialmente incautada, así como el incumplimiento con presentar los *Informes de Actividad Notarial* adeudados, al proceso de desacato civil ante el Tribunal de Primera Instancia, Sala de San Juan, para que así se consolidara con los asuntos previamente referidos (Caso Núm. K MI2023-0222). Además, referimos al Departamento de Justicia el asunto relacionado con los aranceles adeudados.

El 1 de noviembre de 2024, el Director de la ODIN presentó una *Moción informativa* en la que reiteró lo siguiente: (1) la deficiencia arancelaria estimada en la obra notarial se redujo a **$132,799.50**; (2) la abogada no ha entregado aproximadamente 123 instrumentos públicos autorizados; (3) no se han entregado ni transcrito los volúmenes del Libro de Registro de Testimonios, y (4) se adeudan múltiples *Informes de Actividad Notarial*, tanto mensuales como anuales. Además, el Director de la ODIN actualizó la información pertinente a los procesos de desacato civil en los casos K MI2023-0222 y K MI2024-0092 ante el Tribunal de Primera Instancia, Sala de San Juan.[19]

C. Proceso disciplinario ante la Comisionada Especial

El 26 de enero de 2024, emitimos una *Resolución* mediante la cual designamos a la Lcda. Crisanta González Seda (Comisionada Especial), exjueza del Tribunal de Primera Instancia, para que recibiera prueba sobre la capacidad mental de la señora Martín Hidalgo y presentara un informe con sus determinaciones de hecho y las recomendaciones que estimara pertinentes. Asimismo, dispusimos que el panel de los tres (3) médicos psiquiatras que establece la Regla 15(c) de nuestro Reglamento, *supra*, debía hacerse dentro del término de diez (10) días.

---

[19] Específicamente, en cuanto al Caso Núm. K MI2023-0222 se celebró una vista de seguimiento el 15 de noviembre de 2024 y en el Caso Núm. K MI2024-0092 hay una vista pautada para el 13 de diciembre de 2024. Ambos asuntos fueron consolidados.

Mediante una *Orden* emitida el 26 de enero de 2024, la Comisionada Especial concedió a la Oficina del Procurador General (Procurador General) y a la abogada un término de diez (10) días para que cada uno designara el médico psiquiatra de su preferencia y así se lo informaran. De igual manera, les advirtió y apercibió que si en dicho periodo no notificaban la designación del perito psiquiatra, entonces ésta realizaría la designación. A su vez, orientó y apercibió a la señora Martín Hidalgo sobre lo dispuesto en la Regla 15 (e) de nuestro Reglamento, *supra*, a los fines de que si se negaba a someterse al examen médico por los peritos designados, dicha negativa se consideraría como evidencia *prima facie* de su incapacidad mental, con las consecuencias que determine este Tribunal.[20]

En cumplimiento de orden, el 6 de febrero de 2024, el Procurador General notificó la designación del Dr. Raúl E. López como su perito. Por su parte, se designó al Dr. José E. Franceschini Carlo en representación de la Comisionada. Transcurrido el término concedido a la abogada sin que ésta nombrara a un perito, el 8 de marzo de 2024, se designó a la Dra. Dor Marie Arroyo Carrero en representación de la señora Martín Hidalgo. Así pues, el Dr. Raúl E. López, el Dr. José E. Franceschini Carlo y la Dra. Dor Marie Arroyo Carrero serían los tres (3) miembros

---

[20] El archivo en autos de copia de la *Orden* fue el 29 de enero de 2024.

del panel de médicos psiquiatras que evaluarían a la abogada, según dispone la Regla 15 (c) de nuestro Reglamento, *supra*.

Más adelante, el 27 de marzo de 2024, la Comisionada emitió una *Resolución* para sustituir al Dr. José E. Franceschini Carlo debido a que éste, por diferentes circunstancias personales, no estaría disponible para formar parte del panel médico. Por lo anterior, se designó a la Dra. Cynthia Casanova Pelosi en representación de la Comisionada.

Nuevamente, la Comisionada advirtió a la abogada que las citas programadas de forma individual con los tres (3) médicos psiquiatras no podrían cambiarse, excepto por causa justificada y notificada previamente a la Comisionada. De igual forma, se le orientó y apercibió sobre lo establecido en la Regla 15 (e) de nuestro Reglamento, *supra*, en torno a si se negare a someterse a examen médico por los peritos designados, tal negativa se consideraría como evidencia *prima facie* de su incapacidad mental, con las consecuencias que determine este Tribunal.

La señora Martín Hidalgo acudió a las evaluaciones con los peritos y el 31 de mayo de 2024 la Comisionada emitió una *Resolución y Orden* en la que expuso que los peritos psiquiatras designados habían presentado sus respectivos informes. Además, concedió un término de diez (10) días al Procurador General y a la abogada para que expresaran su posición sobre el contenido de los informes y

notificaran si tenían evidencia adicional que debiera ser considerada por la Comisionada.  Asimismo, apercibió a las partes que de no comparecer por escrito en el término concedido, se procedería con la presentación del *Informe* junto a la evidencia que obrara en el expediente.

En cumplimiento de orden, el 7 de junio de 2024, el Procurador General presentó su posición.  No obstante, la señora Martín Hidalgo no respondió a la *Resolución y Orden* emitida por la Comisionada.

Así las cosas, el 16 de julio de 2024, la Comisionada presentó su *Informe* ante este Tribunal.  En particular, expresó que los peritos psiquiatras designados coincidieron en sus evaluaciones en cuanto a que la abogada, **en estos momentos debido a su actual condición de salud mental**, no se encuentra competente para cumplir con sus responsabilidades y ejercer de forma adecuada la representación legal de sus clientes.  De igual forma, el panel de médicos coincidió en que tampoco se encuentra competente para ejercer como notaria.  En vista de lo anterior, la Comisionada recomendó a este Tribunal que mantuviera la separación del ejercicio de la profesión legal hasta que la señora Martín Hidalgo demuestre que ha recibido el tratamiento apropiado y haya podido rehabilitarse de su actual estado emocional.

El caso fue asignado en los méritos para su adjudicación el 18 de julio de 2024, por lo que procedemos a exponer la normativa aplicable.

## II

En el ejercicio de nuestro poder inherente para regular la abogacía en Puerto Rico, tenemos la obligación de asegurarnos de que los miembros admitidos al ejercicio de la profesión legal realicen sus funciones de manera responsable, competente y diligente. *In re* Rivera Justiniano, 212 DPR 377, 401 (2023); *In re* Valenzuela Flores, 211 DPR 934, 939 (2023); *In re* Vélez Torres, 209 DPR 848, 863 (2022); *In re* Raffucci Caro, 206 DPR 589, 605 (2021).

La Regla 15 del Reglamento del Tribunal Supremo, 4 LPRA Ap. XXI-B, tiene el propósito de establecer un procedimiento para separar indefinidamente a un abogado del ejercicio de la abogacía cuando éste no pueda desempeñarse de forma competente y adecuada por razón de alguna condición mental o emocional. *In re* Ortiz Sánchez, 2024 TSPR 17, 213 DPR ___ (2024); *In re* Caratini Soto, 211 DPR 702, 712 (2023); *In re* Rodríguez Torres, 210 DPR 8, 13 (2022). En conformidad con la mencionada Regla 15, en estos casos, este Tribunal designará a un Comisionado Especial que se encargará de recibir, investigar y evaluar prueba sobre la incapacidad mental del abogado, así como de dirimir la credibilidad de cualquier prueba testifical que se presente. *In re* Géigel Bunker, 210 DPR 1, 6 (2022); *In re* Pagán Hernández, 207 DPR 728, 737 (2021).

Como parte del procedimiento dispuesto en la Regla 15 de nuestro Reglamento, *supra*, se designan tres (3) médicos

psiquiatras para que examinen al abogado y rindan sus respectivos informes con sus conclusiones. Específicamente, estos peritos son designados sucesivamente por el Comisionado Especial, por el Procurador General y por el abogado querellado, es decir cada uno de éstos designa a un perito. Estos peritos evalúan al abogado, llegan a sus conclusiones y luego informan al Comisionado, quien, a su vez, notificará copia de dichos informes al Procurador General y al abogado querellado. *In re* Chiqués Velázquez, 201 DPR 969, 972 (2019). Posteriormente, el Comisionado Especial deberá presentar su informe a este Tribunal junto a la prueba documental y material que hubiese sido presentada, incluyendo los informes de los médicos psiquiatras. Véase Regla 15 (c) del Reglamento del Tribunal Supremo, *supra*. Además, en su informe, el Comisionado Especial emitirá sus conclusiones y recomendaciones. *In re* Marrero Rivera, 196 DPR 280, 287 (2016). Una vez sometido el informe del Comisionado Especial, este Tribunal resolverá lo que en derecho proceda.

De acuerdo con nuestra facultad inherente para regular la profesión de la abogacía y la notaría en Puerto Rico, hemos manifestado que cuando la condición mental o emocional de un abogado o abogada le impida ejercer cabal y adecuadamente todas las funciones y los deberes propios de la práctica de la abogacía, es menester suspenderle indefinidamente del ejercicio de la profesión legal

mientras subsista su incapacidad. *In re* Ortiz Sánchez, *supra*; *In re* Rodríguez Torres, *supra*, pág. 14; *In re* Valentín Maldonado, 178 DPR 906, 911 (2010).

Asimismo, hemos expresado que debe quedar claro que, distinto a los casos en los que separamos de la profesión legal a abogados por infringir los Cánones de Ética Profesional, el mecanismo dispuesto en la Regla 15 de nuestro Reglamento, *supra*, no se cataloga como una sanción disciplinaria, sino como una medida de protección social. *In re* Marrero Rivera, *supra*, pág. 287.

### III

Luego de examinar la normativa aplicable, así como el expediente del caso y el *Informe* presentado por la Comisionada, coincidimos con lo expuesto por esta última acerca de que la señora Martín Hidalgo no está en condiciones de asumir competente y adecuadamente su responsabilidad como abogada y notaria. Ante esto, ha quedado establecido que la señora Martín Hidalgo está impedida de ejercer la profesión legal debido a su condición emocional.

En consecuencia, de acuerdo con la Regla 15 (g) de nuestra Reglamento, *supra*, procede que la suspendamos indefinidamente del ejercicio de la abogacía y la notaría hasta tanto pueda demostrar que ha podido rehabilitarse de su actual estado emocional.[21]

---

[21] Recuérdese que el 1 de marzo de 2024 suspendimos provisionalmente

IV

Por los fundamentos antes expuestos, se acoge la recomendación emitida por la Comisionada y suspendemos de forma indefinida a la señora Martín Hidalgo del ejercicio de la abogacía y de la notaría. Esta suspensión estará vigente hasta que la abogada pueda acreditar que se encuentra capacitada para ejercer la profesión legal nuevamente. Esta suspensión no constituye un desaforo, sino una medida de protección social.

En consecuencia, la señora Martín Hidalgo deberá notificar inmediatamente a todos sus clientes sobre su inhabilidad para continuar representándoles. Asimismo, deberá devolver a sus clientes los expedientes de los casos pendientes, así como los honorarios recibidos por trabajos no realizados. De igual manera, deberá informar inmediatamente de su suspensión a cualquier foro judicial y administrativo en los que tenga algún asunto pendiente y acreditar a este Tribunal el cumplimiento con lo anterior, incluyendo una lista de los clientes y los foros a quienes les notificó de su suspensión, dentro del término de treinta (30) días, contado a partir de la notificación de esta Opinión *Per Curiam* y Sentencia.[22] No hacerlo pudiera

_____

a la señora Martín Hidalgo del ejercicio de la abogacía y de la notaría hasta tanto finalizara el procedimiento establecido en la Regla 15 de nuestro Reglamento, *supra*.

[22] En nuestra *Resolución* del 1 de marzo de 2024, le ordenamos a la abogada a cumplir con tales requerimientos en dicho término, pero ésta incumplió.

conllevar que no se le reinstale a la práctica de la profesión legal, de solicitarlo en el futuro.

Asimismo, reiteramos nuestro referido al Departamento de Justicia para la atención de aquello relacionado con ciertos aranceles adeudados por la señora Martín Hidalgo. Véase *Resolución* del 29 de abril de 2024.

Se dictará Sentencia en conformidad.

---

Por su parte, en cuanto a la cancelación de la fianza notarial, ello se ordenó en la mencionada *Resolución* del 1 de marzo de 2024 cuando suspendimos provisionalmente a la señora Martín Hidalgo del ejercicio de la abogacía y la notaría.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| *In re*: | | |
| | TS-17,951 | Conducta Profesional |
| María del Mar Martín Hidalgo | | |

SENTENCIA

En San Juan, Puerto Rico a 27 de noviembre de 2024.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte íntegra de la presente Sentencia, suspendemos de forma indefinida a la Sra. María del Mar Martín Hidalgo (señora Martín Hidalgo) del ejercicio de la abogacía y de la notaría.

En consecuencia, la señora Martín Hidalgo deberá notificar inmediatamente a todos sus clientes sobre su inhabilidad para continuar representándoles. Asimismo, deberá devolver a sus clientes los expedientes de los casos pendientes, así como los honorarios recibidos por trabajos no realizados. De igual forma, deberá informar inmediatamente de su suspensión a cualquier foro judicial y administrativo en los que tenga algún asunto pendiente y acreditar a este Tribunal el cumplimiento con lo anterior, incluyendo una lista de los clientes y los foros a quienes le notificó de su suspensión, dentro del término de treinta (30) días, contado a partir de la notificación de la Opinión *Per Curiam* y Sentencia. No hacerlo pudiera conllevar que no se le reinstale a la práctica de la profesión legal y de la notaría, de solicitarlo en el futuro.

Asimismo, reiteramos nuestro referido al Departamento de Justicia de Puerto Rico para la atención de los asuntos relacionados con los aranceles adeudados por la señora Martín Hidalgo. Véase Resolución del 29 de abril de 2024.

Notifíquese personalmente y por correo electrónico.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.


                              Javier O. Sepúlveda Rodríguez
                              Secretario del Tribunal Supremo